REGAN, Judge.
The plaintiff, Gulf Coast Gasoline Company, Inc., instituted this suit against the defendant, C. Adrien Bodet, conducting his business under the trade name of Bodet Insurance Agency, endeavoring to recover the sum of $1,517.16, representing the balance due for unearned premiums which had been refunded to the defendant from the General American Casualty Company, for its account and not forwarded to it.
Defendant answered and generally denied the allegations of plaintiff’s petition and then reconvened asserting that the plaintiff was indebted unto him in the amount of $570.42.
From a judgment in favor of the plaintiff as prayed for and dismissing the reconven-tional demand, the defendant has prosecuted this appeal.
During the years 1951, 1952 and 1953, the defendant serviced a large portion of plaintiff’s insurance coverage through an open account. Defendant would place plaintiff’s insurance with a company of his choice and then bill it for the premium and upon receipt of payment would remit to the insurer their proportion thereof and retain his-commission of twenty percent. The relationship was a satisfactory one to plaintiff and a profitable one to defendant since approximately $11,000 of insurance premiums were involved each year. During the latter part of October, 1952, the Texas Mutual Insurance Company, upon the advice of defendant, cancelled two policies of plaintiff’s for the reason that it was a “bad risk” and for the additional reason that defendant advised plaintiff that he had been *480 informed by “Lloyds of London” that the 'Texas Mutual Insurance Company may be involved'in financial difficulties. On November 7, 1952, defendant credited plaintiff’s account with the unearned premiums emanating from the cancelled Texas Mutual Insurance Company policies amounting to $2,088.18 and debited it for the replacement thereof in the General American Casualty Company. The debits appearing on a statement dated November 18, 1952, exceeded the credits and plaintiff mailed its check to defendant to cover the difference. Defendant, at this time, exerted no effort to secure from the Texas Mutual Insurance Company the unearned premiums as he was still transacting business with them and plaintiff had no interest in determining whether defendant had actually received •the refund. Defendant still had plaintiff’s account and plaintiff its credit and, therefore, their relationship, up to this time, was 'harmonious.
On or about December 15, 1952, the Texas '.Mutual Insurance Company was placed in receivership and defendant testified that Ihe has never collected the unearned premiums from this company.
Shortly after the issuance of thé policies ■of insurance by the General American Casualty Company, defendant notified plaintiff that the financial responsibility of this company was questionable and suggested that if they were offered coverage by any other reputable insurer to accept it rather than have the coverage become “an assigned risk.” Subsequently General American Casualty Company'withdrew its operations from Louisiana and once again plaintiff’s policies were cancelled. Plaintiff, following defendant’s suggestion, secured coverage elsewhere and the business relationship remained pleasant until defendant learned that another agent had written the insurance and would, therefore, collect the commission instead of himself.
It was at this time that plaintiff requested payment of the unearned premiums resulting from the cancelled policies of ■General American Casualty and a dissension then arose concerning the credit from the Texas Mutual Insurance Company.' The correspondence between defendant and plaintiff’s attorneys reveals that he acknowledged receipt of a credit or refund from the General American Casualty Company for the unearned premiums, but wrote that since he had been deprived of plaintiff’s insurance business, he assumed the attitude that plaintiff was not entitled to a credit for the amount of these unearned premiums despite the fact that he had initially credited plaintiff’s account on November 7, 1952, with the unearned premiums of $2,088.18, resulting from the cancellation of the Texas Mutual Insurance Company policies and thereafter assured plaintiff, through its attorneys, both orally and in writing that he would “take care” of the unearned premiums irrespective of whether Texas Mutual Insurance Company ever paid them.
The” record reveals that there is but one item in dispute and that is the unearned premiums resulting from the cancellation of the Texas Mutual Insurance Company policies amounting to the sum of $2,088.18. Defendant concedes that if he is liable it is for $1,517.16, the amount for which plaintiff brought this suit and which represents the unearned premiums refunded 'to the defendant for the plaintiff’s account by the General American Casualty Company.
The only question posed for our consideration is whether the defendant, after having credited plaintiff’s account, in the usual course of business, with the amount of the unearned premiums resulting from the cancellation of the policies of the Texas Mutual Insurance Company, thereafter clearly agreed to assume liability therefor irrespective of whether this insurance company ever'refunded these premiums to’him?
The trial court obviously was of the opinion that the defendant assumed liability for the refund of these premiums to the plaintiff irrespective of whether the Texas Mutual Insurance Company ever refunded them to the defendant and the record discloses an abundance of evidence in support of this conclusion.
*481 On November 18, 1952, the defendant sent to the plaintiff a statement reflecting that it had been given credit as of November 7, 1952, in the amount of $2,088.18, for the unearned premiums ag the result of the cancellation of 'the policies with the Texas Mutual Insurance Company and under the respective dates of May 26, June 11, and July 8, 1953, the defendant addressed letters to plaintiff’s attorneys, wherein he stated:
“We have done everything in our power to' make our relations with Gulf Coast Gasoline Company pleasant because we always found them to be very fine people. In the case of the Texas Mutual which went into receivership, notwithstanding the fact that the Attorney General of Texas, prohibited any refund, we assumed the responsibility of giving proper credit to our policyholder, not because it was an obligation, but we enjoyed the business.
“When we cancelled General American coverage we asked that proper return premium be made as soon as possible and as soon as this is received, we will be more than happy to remit.
“From the above you can see that we could very easily have taken an arbitrary position, and assumed that any returns due could' be sought from the liquidation of the Texas Mutual.
“ * * * We are obligated to Gulf Coast ourselves and we solicit yóur further indulgence thereon with a definite assurance that within the next few weeks we will liquidate this matter ourselves.
“ * * * we * * * reiterate our prior assurance that the full amount due . your client will be paid by us whether received or not.”
On cross-examination the defendant was interrogated as follows:
“Q. Well when you made the agreement there were no ifs, ands and buts about it * * * ? A. That’s correct.
“Q. Whether you received the, return premium or'not? A. That’s correct.”
We are of the opinion that the defendant unequivocally assumed liability for the refund of the unearned premiums resulting from the cancellation of the policies of the Texas Mutual Insurance Company irrespective of whether that company ever refunded them to the defendant.
For the reasons assigned the judgment appealed from is affirmed! •
Affirmed.